IN THE

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA**
_____

RICHARD ROE, A MINOR STUDENT, BY AND THROUGH HIS PARENTS AND NEXT
FRIENDS, RICHARD ROE, SR., AND JANE ROE,
*Plaintiffs,*

v.

HAMILTON COUNTY DEPARTMENT OF EDUCATION, DBA HAMILTON COUNTY
SCHOOLS; ANDRE MONTGOMERY, INDIVIDUALLY;
JESSE NAYADLEY, INDIVIDUALLY;
JAMES JARVIS, INDIVIDUALLY; AND
MARSHA DRAKE, INDIVIDUALLY,
*Defendants,*

No. _____

The Honorable Judge _____

**JURY IS DEMANDED**

---

**COMPLAINT**

---

COME THE PLAINTIFFS, Richard Roe,[1] a minor student, by and through his parents and next friends, Richard Roe, Sr., and Jane Roe. They show for their Complaint:

---

[1]      "Richard Roe" is a minor and the name "Richard Roe" is a substitute identification to protect the minor's identity.  The parents' identities are also substitutes to protect the minor.

# I. INTRODUCTION

1.      This lawsuit arises from the Defendants' deliberately indifferent conduct to extreme student-on-student sexual harassment and assault and bullying.  Defendants' history of failure to take appropriate preventive measures, failure to adequately respond to the events, failure to adequately investigate the events, failure to observe Title IX requirements, and failure to offer appropriate assistance to the victim implicates civil rights and the denial of educational opportunities.  This action alleges violations of Title IX, denial of equal protection of the laws under the Fourteenth Amendment to the United States Constitution, and violation of state tort laws.

# II. PARTIES

2.      Richard Roe is a minor and a citizen of Hamilton County, Tennessee, where he resides with his parents and next friends, Richard Roe, Sr., and Jane Roe.

3.      The Hamilton County Department of Education (HCDE), doing business as Hamilton County Schools, is a governmental entity charged with managing public schools in Hamilton County.  It is a recipient of federal funds.

4.      Defendants Andre Montgomery, Jesse Nayadley, and James Jarvis are all adult residents of Hamilton County, Tennessee.

5.      Defendant Montgomery, in his official and individual capacities, acted as the head coach of the Ooltewah High School (OHS) boys'

2

basketball team. He was an agent and/or employee of HCDE and acted or failed to act within the scope and course of his duties.

6. Defendant Nayadley, in his official and individual capacities, acted as the Athletic Director and Assistant Principal of OHS. He was an agent and/or employee of HCDE and acted or failed to act within the scope and course of his duties.

7. Defendant Jarvis, in his official and individual capacities, acted as the Principal of OHS. He was an agent and/or employee of HCDE and acted or failed to act within the scope and course of his duties.

8. Defendant Drake, in her official and individual capacities, was designated as HCDE's Title IX Coordinator. She was an agent and/or employee of HCDE and acted or failed to act within the scope and course of her duties.

## II.    JURISDICTION AND VENUE

9. The Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331, Title IX (the Education Amendments Act, 20 U.S.C. § 1681), and the Fourteenth Amendment to the United States Constitution, through 42 U.S.C. § 1983. The Court also has jurisdiction under 28 U.S.C. § 1343. The Court has supplemental jurisdiction over state law claims through 28 U.S.C. § 1367 because the state law claims are so related to Richard Roe's claims under Title IX, Fourteenth Amendment, and § 1983 claims that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper under 28 U.S.C. §1391(b), as all of the Defendants reside or may be found in Hamilton County and a substantial part of the acts or omissions occurred in Hamilton County, along with Sevier County, also located in the Eastern District of Tennessee.

## III.  FACTS

11.     HCDE, at all times, received federal funding as contemplated by Title IX, 20 U.S.C. § 1681, *et seq.*

12.     HCDE is responsible for ensuring that its employees are properly trained and supervised and that its students, including Richard Roe, are safe.  These obligations extend beyond the four walls of the classroom, to extracurricular events including out-of-town school-sponsored athletic events.

13.     HCDE, through its principal (Jarvis), its head coach (Montgomery), its athletic director (Nayadley), and its Title IX Coordinator (Drake), have actual authority to prevent and respond to harassment, bullying, hostile athletic environments, and any violations of Title IX.

### A.  "THE RACKINGS"

14.     As high school freshman, Richard Roe and three other males earned spots on the Ooltewah High School boys' varsity basketball team.[2]

15.     Freshmen like Roe on the OHS varsity basketball squad—past and present—were expected to endure unannounced physical and emotional abuse.

---

[2]     Approximately fifteen other freshmen played on the junior varsity team or the "freshmen team," or both.

4

16. Upperclassmen gave them advanced warnings: once the athletes joined the basketball team in the fall, an abuse ritual known as "rackings" would begin.

17. "Rackings," a gang initiation term, consisted of (a) upperclassmen who were generally larger and stronger (b) turning off the locker room lights without warning, (c) blocking the doors to prevent the freshmen's escape, and (c) pummeling the freshmen with fists to the point of pain and making them "want to fight."

18. The advanced warnings proved accurate, as "rackings" of the freshmen, including Roe, occurred repeatedly, multiple times per week during the fall of 2015.

19. Culturally, this violence was seen as a male rite of passage by the upperclassmen who themselves had experienced "rackings" when they were freshmen. "We got it too," "it was harder in our day," and "it's just part of it" were common refrains.

20. Richard Roe experienced physical pain, torment, and humiliation by the repeated abuse of "rackings" upon him.

21. "Rackings" were *known* by the head coach, Defendant Montgomery. Multiple times, Defendant Montgomery would enter the locker-ron during a racking, flip on the lights, and tell the athletes to stop it. However, despite his actual knowledge, Montgomery did nothing to bring an end to the beatings.

22. This systemic hazing and abuse was unique to *boys'* basketball and did not occur and was not allowed on the girls' basketball team.

5

## B. THE GATLINBURG ABUSE

23.     On or about December 19, 2015, Defendant Montgomery arranged a mini-vacation for himself and his wife in Gatlinburg in connection with a high school basketball tournament, the Smokey Mountains Christmas Classic basketball tournament in Gatlinburg, Tennessee.

24.     With school money, Defendant Montgomery rented a mountain cabin called "J.J.'s Hideway," advertised as being "an affordable 5 bedroom, 4 bath, sleeps 15, with Hot Tub, fireplace, and Wi-Fi."

25.     Although the first game of the tournament was not until Monday, December 21, 2015, Defendant Montgomery, Assistant Coach Carl Williams, and fourteen basketball players went up two days before, on Saturday, December 19, 2015.  Defendant Montgomery's wife would join them later.  Defendant Nayadley, the Athletic Director, traveled to Gatlinburg too but stayed separately from the team.

26.     Defendant Montgomery and his wife slept in one upstairs bedroom.  Assistant Coach Williams slept in another upstairs bedroom. The fourteen basketball players stayed in the three downstairs rooms, with three freshmen, including Roe, staying in one room together.

27.     After their arrival, Coach Montgomery and Williams left the fourteen boys unattended while the coaches went grocery shopping.

28.     After the coaches departed, one of the freshmen was thrown into a hot tub against his will by upperclassmen.  Roe locked himself inside a bathroom to escape the same treatment, but once he emerged, he was

forcibly grabbed by upperclassmen and thrown into the hot tub too, also against his will.

29.     On Sunday, the team went to the movie theater and saw the movie *Creed*.

30.     On Sunday evening, two upperclassmen attacked one of the freshmen in the lower level of the cabin with a pool cue.

31.     Minutes later, the same occurred to Roe.  Specifically, Roe was forcibly grabbed and wrestled to the ground. One upperclassman, a linebacker for the football team, held Roe's body down while another forced a pool stick between his buttocks.  Roe screamed and grabbed the pool stick with two hands to prevent its further insertion, feeling the end of the stick bumping his private area.  His clothing did not tear but he reasonably feared anal rape given the force, circumstances, and the pool stick inside his anal region.  This amounted to a sexual assault.

32.     A third freshman was similarly attacked with the pool stick in a similar manner the next day, on December 21, 2015.

33.     These violent acts, like the "rackings" and the hot tub ordeal, were accepted as freshmen hazing by the upperclassmen, and numerous teammates stood and watched the freshmen abused with the pool stick.

34.     Like the "rackings," these sexual assaults were not accepted behavior perpetrated on female athletes and were uniquely designed to humiliate the boys because of their sex.

35.     Defendant Montgomery rarely ventured to the lower level, providing little to no supervision.  He mostly stayed on the upper level

where the kitchen and bedrooms were located. However, on one occasion, Assistant Coach Williams went to the lower level at night and asked the three freshmen why they had their door locked. Roe stated they were afraid of what the upperclassmen might do to them. Despite this, no further precautions were taken to protect the freshmen from further abuse.

36.     OHS played in the basketball tournament on December 22, 2015.

37.     Later that evening, the last of the four freshmen was brutally attacked with a pool stick to the rectum. The last attack resulted in the tearing of the freshman's clothing, insertion of the pool stick into his rectum, and even the breaking off of the pool stick's tip inside the freshman's body cavity.

38.     Again, not one player on the basketball team intervened, allowing two attacks on freshmen to occur on December 20, 2015, another on December 21, 2015, and a final, devastating act on December 22, 2015.

39.     Roe reported the attack upon the final freshman to Coach Montgomery, who could easily hear all the commotion from one level above. Montgomery went downstairs to find his player in pain and bloodied.

40.     Coaches Montgomery and Williams took the freshman to the hospital for treatment. A hospital nurse reported the matter to police and Detective Rodney Burns was assigned to the case.

41.     No one from HCDE reported the matter to the Department of Children's Services as child abuse.

8

42.     Around 2:30 a.m. on December 23, 2015, the final freshman, the coaches, and Detective Burns returned to J.J.'s Hideway.  However, the freshman experienced further pain and was transported by ambulance back to the hospital, where a CT scan discovered a foreign object (the pool stick tip) lodged in his rectal wall and bladder. He eventually underwent surgery to have this object removed.

43.     Back at J.J.'s Hideaway, Detective Burns gave Miranda warnings to the assailants.  They each confessed.

### C.  The Deliberately Indifferent Actions and Inactions of The Adults

44.     Around 11:30 a.m. on December 23, 2016, HCDE leadership, including Superintendent Rick Smith, Assistant Superintendent Lee McDade, Defendant Principal James Jarvis, and Secondary Operations Director Steve Holmes, received reports of the attacks upon the freshmen boys.

45.     In spite of the criminal attacks, the confessions and arrests of players, and the surgery of the final freshman, OHS decided it would continue playing basketball.

46.     Together, Defendants Principal Jarvis and Atheletic Director Nayadley, who had a son on the team, made the decision to allow the team to continue playing, with Operations Director Steve Holmes being advised. This reflected grave indifference to the sexual assaults.

47.     Richard Roe, Sr. and Jane Roe did not even learn of the December 20, 2015, sexual assault upon their son until the team was return-

ing home to Chattanooga, and then only because Jane Roe contacted a coach to learn about the game.

48. In the aftermath of the attacks in Gatlinburg, prompt, remedial, and adequate measures were not taken by adults. In fact, HCDE, along with the individual defendants, was deliberately indifferent to the victims and their families. HCDE, along with the individual defendants, did not offer comfort, support, counseling, reassurance, or even simple acts of kindness and concern.

49. Months after the Gatlinburg attacks, after a local outcry from citizens demanding an investigation, HCDE hired local attorney Courtney Bullard to perform an investigation and report findings.

50. In her August 4, 2016, report, Ms. Bullard recorded that "[s]omeone from OHS or HCDE should have reached out to these families to extend support."

51. Defendant Principal Jarvis was indifferent to the crisis. Per Ms. Bullard's report, Defendant Jarvis claimed "there was only one victim" and that there was no point of him reaching out to any others unless he had news about "the upcoming basketball season." However, the freshmen players had by that time departed the team.

52. Additionally, in a September 19, 2016, report by District Attorney General Neal Pinkston, it was revealed that HCDE Superintendent Rick Smith had "failed to make a sincere effort to contact any of the parents of the victims or other players on the trip"—even though Smith was

the highest ranking official for HCDE and the head of Tennessee's fourth-largest public school system.

53. Not only were the post-attack *remedial* measures of the adults grossly deficient and deliberately indifferent, so too were any *preventive* measures.

54. Defendant Jarvis, the Principal, allowed the Gatlinburg trip without obtaining HCDE Board approval per board policy. Upon information and belief, per Defendant Jarvis, the trip was originally denied by the Board, with a request for modification. Nor was any transportation plan filed. Given these failings, the trip should never have occurred, and had it not, the final attacks would not have occurred.

55. Defendant Montgomery and HCDE provided little to no supervision of the fourteen basketball players. With adequate supervision, the final attacks would not have occurred.

56. The HCDE policies on abuse, hazing, sexual harassment, and bullying at HCDE were not taken seriously by the adults in charge. Paper policies alone are insufficient. HCDE failed to adequately train its officials on its bullying, hazing, and sexual assault policies. It failed to impress upon its officials the seriousness of these problems and the importance of the policies designed to prevent them. It failed to monitor adherence to these policies. And it failed to monitor the effectiveness of any preventive measures taken (0r not taken) by its officials. All of these failures allowed the systematic abuse of students to continue unchecked.

57.    HCDE's own "Title IX Coordinator," Defendant Drake, lacked appropriate training on Title IX. It was not even clear to the public or students that Drake *was* the Title IX coordinator.  As Ms. Bullard's report found,  "Ms. Drake has not received adequate training on Title IX. She also has a host of responsibilities outside of those as a Title IX coordinator.  Thus, the HCDE designated her as coordinator without consideration of the appropriate infrastructure, support and training."

58.    Additionally, Defendant Drake did not carry out her preventive or remedial responsibilities. Indeed, Drake took no effective steps to remedy any of the events. Not one time did she effectively contact any of the Plaintiffs with appropriate assistance.

59.    The need for heightened awareness and adherence to anti-bullying, hazing, and abuse standards was particularly prevalent at Ooltewah High School.  OHS has an ugly and pervasive history of abuse, with one of the assailants himself experiencing the racking abuse several years before, when he was a freshman.

60.    OHS has lionized sports and athletes to the point of protecting athletes who engage in misconduct. As District Attorney General Pinkston's report found, OHS has a culture "that is, at the very least, lax towards athletes who break the rules, and at most, offers an environment that fosters violent behavior."

61.    OHS also has a history of not dealing seriously with abuse. Even when the abuse concerns molestation accusations of students by coaches, it has not taken stronger, preventive measures for the future.

12

62.     HCDE's own board is not kept sufficiently apprised of bullying, assaults, or personal injuries and, as a result, the public is also unaware of these abuses.

63.     As a result of all of HCDE's tolerance of the rituals of abuse culminating in the Gatlinburg attacks, failure to take preventive measures, and failure to offer adequate remedial measures, Richard Roe suffered and continues to suffer, emotional distress, humiliation, embarrassment, pain, and rumination.  He was constructively removed from OHS and now his parents, Richard Roe Sr. and Jane Roe, have incurred the cost of private education at Hamilton Heights Christian School.

## D.  HCDE BURIES AND DENIES THE FINDINGS OF THE BULLARD REPORT THAT IT COMMISSIONED

64.     It was none other than the HCDE school board who commissioned Attorney Courtney Bullard as "an independent investigator to conduct a fair and impartial investigation," including the following tasks:

    a.     "Assess the climate of the OHS basketball program regarding the reporting and addressing of bullying, hazing and/or sexual harassment";

    b.     Review OHS and HCDE policies and procedures to determine where, if any, deficiencies in communication or conflicts in policy may exist with respect to bullying, hazing and/or sexual harassment;

13

c.      Review training for student-athletes and OHS athlet-ics staff to determine where, if any deficiencies exist with re-spect to bullying, hazing and/or sexual harassment.

65.    Ms. Bullard was not retained by any of the freshmen who suffered the abuse.

66.    Alarmingly, in spite of hiring Ms. Bullard, and in spite of the findings of District Attorney General Pinkston, the HCDE disregards most of these reports entirely.  It even denies Ms. Bullard's finding that "a cul-ture of hazing existed on the varsity basketball team prior to the Gat-linburg incident." (Bullard Report, ¶ 23).

67.    Moreover, in spite of the numerous failings by adults, the findings of Attorney Courtney Bullard, and the findings of District Attor-ney General Pinkston, HCDE still refuses to accept any legal responsibility whatsoever.

68.    In Case No. 1:16-CV-00373, filed in United States District Court by one of the freshmen and heard by Judge Travis, HCDE filed a le-gal pleading on November 9, 2016, stating,  "It is denied that this Defend-ant is responsible to the Plaintiffs' under any theory of law." (Answer, ¶ 4). It adds that the injuries of the freshmen were the "sole" cause of the bas-ketball players, not any fault of the adults whatsoever in terms of preven-tion, remediation, supervision, or training.

69.    Moreover, HCDE "denied" or claimed it did not know almost the entirety of the events concerning the abuse of the freshmen despite having commissioned the Bullard report.  This report detailed many of the

events and publicly reported them after interviewing forty (40) individuals over the course of seven weeks. (*see, e.g.*, Bullard Report, ¶¶ 57-88)

70.     In sum, HCDE still has not learned and its "remediation" with respect to the victims remains a ruse.  Simply, in the public courtroom where it matters, HCDE disavows its own counsel's findings and the public statements of HCDE board members in an effort to avoid, at any cost, assisting the victims.

## IV.     CAUSES OF ACTION

71.     Plaintiffs bring the following causes of action in the counts below.

## COUNT I. TITLE IX—HCDE

72.     The foregoing factual averments are incorporated herein.

73.     The sex-based harassment of the Plaintiff Roe was severe, pervasive, and objectively offensive, and it deprived Roe of access to educational opportunities or benefits.  HCDE created, tolerated, and subjected Roe to a hostile educational environment under Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 681(a), because Plaintiff Roe was treated disparately based upon his gender; suffered sexual assault and other harassment; and HCDE had a lack of adequate policies, training, and procedures and deliberately failed to take appropriate preventive or remedial measures.  Moreover, HCDE and officials had actual knowledge of the harassment and chose not to seriously investigate or discipline the perpe-

trators. HCDE and its officials engaged in a pattern of behavior, a cover-up, to discourage students from reporting the sexual assaults.

## COUNT II. TITLE IX RETALIATION
## BY WITHHOLDING PROTECTIONS—HCDE

74.     The foregoing factual averments are incorporated herein.

75.     HCDE officials discouraged players from reporting and failed to report the sexual assaults to Roe's parents. HCDE officials tried to dissuade players from reporting the events, tried to minimize the events, allowed the team to continue playing basketball in an effort to distract from the events, and failed to timely report the events to Roe's parents.

76.     Once law enforcement became involved, HCDE and its officials adopted an adversarial tone toward the victims, refusing to investigate the matter or otherwise comply with responsibilities of Title IX. Even when public outcry resulted in the appointment of independent counsel and public calls for Defendant Jarvis to assist the victims, he refused.

## COUNT III. VIOLATION OF THE FOURTEENTH AMENDMENT
## AND SECTION 1983—ALL DEFENDANTS

77.     The foregoing factual averments are incorporated herein.

78.     Plaintiff Roe enjoys the right as an American public school student to personal security, bodily integrity, and Equal Protection of the Laws.

79.     The individual defendants, Montgomery, Nayadley, Jarvis, and Drake were all state actors acting under color of state law.

16

80. All defendants subjected Plaintiff Roe to violations of his right to bodily integrity and Equal Protection of the Laws by failing to take appropriate preventive measures; failing to adequately supervise and train (or engage in supervision); and by acting with manifest indifference to the sexual assault, bullying, and harassment of Roe.

81. HCDE's actions were taken pursuant to customs or policies or practices of failing to investigate, failing to adequately train and supervise, and a historical indifference to the bodily integrity of student athletes dating back not only years, but generations.

82. Defendants Montgomery, Nayadley, Jarvis, and Drake were considered policymakers for the purpose of implementing and carrying on the aforesaid policies, customs, or practices.

### COUNT IV. MONELL LIABILITY FOR FAILURE TO TRAIN AND SUPERVISE (42 U.S.C. §1983)—ALL DEFENDANTS

83. The foregoing factual averments are incorporated herein.

84. Defendants Montgomery, Nayadley, Jarvis, and Drake were state actors working for HCDE. They worked under "color of state law" in failing to appropriately prevent or remedy the sexual assaults. They each violated Roe's right to equal access to an environment free from harassment and sexual assault, due to a policy or custom of failing to investigate, failing to take prompt remedial measures, failing to protect Roe, failing to provide a grievance procedure widely disseminated and capable of being understood, failing to notify Roe's parents of the harassment and sexual

17

assault, and acting with deliberate indifference to violence against male athletes. These failures proximately caused the injuries to Roe.

85.     Additionally, HCDE violated Plaintiff's Fourteen Amendment right to equal protection by failing to properly train and supervise its employees in mandated investigative requirements.  The need to train its principal, coaches, athletic director, and Title IX Coordinator is so obvious, and the inadequacy so likely to result in violation of constitutional rights, that HCDE was deliberately indifferent and acted pursuant to a policy or custom of indifference to violence against male athletes.  These failures proximately caused the injuries to Roe.

### COUNT V. VIOLATION OF THE TENNESSEE GOVERNMENTAL TORT LIABILITY ACT – (ALL DEFENDANTS)

86.     The foregoing factual averments are incorporated herein.

87.     Based upon the foregoing, Plaintiffs bring claims against all Defendants for their negligence, negligent supervision, negligent failure to train, negligence per se, and tolerance of false imprisonment.

88.     For the totality of their claims, Plaintiffs seek as damages payment for appropriate mental suffering and pain for Roe; payment of the costs of private education; reasonable attorneys' fees and costs; punitive damages against the individual defendants; injunctive relief to include appropriate policies, training, supervision, reporting requirements, observance of duties of Title IX officials, and monitoring; and any further relief at law or equity which may be appropriate.

89.    Plaintiffs demand a jury.

Respectfully Submitted,

**GILBERT RUSSELL McWHERTER
SCOTT BOBBITT, PLC**

 /s Justin S. Gilbert

Justin S. Gilbert (TN Bar No. 017079)
100 W. Martin Luther King Blvd, Suite 504
Chattanooga, TN 37402
Telephone: 423-499-3044
Facsimile: 731-664-1540
jgilbert@gilbertfirm.com


**LEWIS & OLIVER**

/s Eric J. Oliver

Eric J. Oliver (TN Bar No. 017509)
100 W. Martin Luther King Blvd, Suite 501
Chattanooga, TN 37402
Telephone: 423-756-8203
Facsimile:  423-756-2233
eoliver@lewisoliver.com