IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| JOHN DOE )<br>by and through his next friend JANE DOE )<br>)<br>    PLAINTIFF )<br>)<br>V. )<br>)<br>HAMILTON COUNTY BOARD OF EDUCATION,)<br>d/b/a HAMILTON COUNTY SCHOOLS; et al )<br>)<br>    DEFENDANTS. )<br>)<br>RICHARD ROE, et al )<br>)<br>    PLAINTIFFS )<br>)<br>V. )<br>)<br>HAMILTON COUNTY DEPARTMENT OF )<br>EDUCATION, d/b/a HAMILTON COUNTY )<br>SCHOOLS; et al )<br>)<br>    DEFENDANTS. ) | No. 1:16-CV-00373<br>JURY DEMAND<br><br><br><br><br><br><br><br>No. 1:16-cv-00497<br>JURY DEMAND |

**MOTION TO EXCLUDE, UNDER *DAUBERT* AND FEDERAL RULE OF CIVIL EVIDENCE 702, PLAINTIFFS' EXPERT, CHAROL SHAKESHAFT, Ph.D.**

**NOW COMES** the Defendant, the Hamilton County Department of Education, and moves this Court to exclude the Plaintiffs' Rule 26 expert witness based upon the grounds stated below. This Motion is applicable to all Plaintiffs in the *Doe* and *Roe* matters. This Defendant would show this Court as follows:

1

As the Court is aware, the Plaintiffs' Complaint alleges that this Defendant violated 42 U.S.C. § 1983, Title IX, and were negligent in its supervision of the boys' basketball team while in Gatlinburg during the incident in question. Pursuant to Title IX, under <u>Davis v. Monroe Cty. Bd. of Educ.</u>, 526 U.S. 629 (1999), the Supreme Court established that Title IX may support a claim of student-on-student sexual harassment if the following are demonstrated:

(1) Plaintiff was subject to harassment based upon sex;

(2) The sexual harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the education opportunities or benefits provided by the school;

(3) The funding recipient had actual knowledge of the sexual harassment; and

(4) The funding recipient was deliberately indifferent to the harassment.

In <u>Patterson v. Hudson Area Schools</u>, 724 F.Supp.2d 682 (2010), the Court noted Title IX only protects harassment or discrimination based upon sex, not actions that constitute bullying. Therefore, allegations of bullying or hazing are not relevant to Plaintiffs' claims under Title IX or §1983.

Rule 702 of the *Federal Rules of Evidence* provides for the admissibility of expert testimony in the federal courts, setting the following parameters:

> "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; b) the testimony is based on sufficient facts or data; c) the testimony

2

> is the product of reliable principals and methods; and, d) the expert has reliably applied the principals and methods to the facts of the case."

Fed. R. Evid. 702.

Although Rule 702 affords a court wide latitude to admit expert testimony, such testimony is inadmissible if it does not meet two related requirements: (1) it must be based on the special knowledge of the expert; and (2) it must be helpful to the finder of fact. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 508 U.S. 579, 589-91 (1993); ("'To warrant the use of expert testimony ... two elements are required. First, the subject of the inference must be so distinctively related to some science, profession, business or occupation as to be beyond the knowledge of the average layman, and second, the witness must have such skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth'") (quoting McCormick, Evidence § 13)).

The burden is on the party offering the proposed expert opinion testimony to prove by a preponderance of the evidence that the testimony satisfies the requirements for admissibility. Daubert, 509 U.S. at 592. An expert for one purpose is not an expert for all purposes. Accordingly, not all opinions that happen to be held by an expert are "expert opinions." See United States v. Benson, 941 F.2d 598, 604 (7th Cir. 1991). Defendant moves to exclude the testimony of Dr. Charol Shakeshaft due to the fact that: (1) her opinions do not assist the trier of fact as to Plaintiffs' allegations under Title IX and §1983; (2) Dr. Shakeshaft admits that the validity of the information she relied upon had not been established; and (3) Dr. Shakeshaft's speculation does not assist the trier of fact.

Dr. Charol Shakeshaft has a Ph.D. in educational administration. She refers to her report as an "evaluation." Dr. Shakeshaft states that her "evaluation" was conducted by "reading documents and applying her education experience, research, and knowledge of peer sexual harassment, abuse, and bullying." As stated regarding Dr. Vinson and Mr. Dinwiddie, any references to bullying or hazing have no application to the Plaintiffs' cause of action against the Hamilton County Board of Education under Title IX. Dr. Shakeshaft reviewed various documents, including the pleadings to the cause of action, as well as documents from the Gatlinburg Police report, interviews with Andre Montgomery, Jesse Nayadley, Jim Jarvis, and the Pinkston report. Any reliance on the Pinkston report is reliance upon complete conjecture and no empirical evidence. Attorney General Pinkston has recently claimed immunity from having to testify about the Pinkston report. Most recently, a deposition taken of Jesse Nayadley directly contradicted most, if not the entirety, of the Pinkston report. Consequently, any reliance upon the Pinkston report is a reliance on nothing but suppositions and conjecture. Accordingly, Dr. Shakeshaft's reliance upon the Pinkston report is not relevant.

As part of her evaluation, Dr. Shakeshaft relied upon interviews with Jesse Nayadley and Andre Montgomery. Dr. Shakeshaft, within the four corners of her expert report, references no investigation conducted by her or anyone on her behalf. Since her evaluation, Andre Montgomery, Jesse Nayadley, and Jim Jarvis have testified under oath that they did not have actual notice of any acts perpetrated by fellow students against John Doe and Richard Roe. Dr. Shakeshaft also reviewed the athletic extracurricular policy, Olweus Bullying Prevention, and policies regarding discrimination, harassment, bullying, intimidation, assault, fights, and disturbance overview, none of which have any application

4

to the Plaintiffs' cause of action under Title IX against the Hamilton County Board of Education. Accordingly, the very information that Dr. Shakeshaft relied upon for her "evaluation" in no way assists the trier of fact with regard to the cause of action under Title IX against the Hamilton County Board of Education.

Within her report, Dr. Shakeshaft also cites T.C.A. §37-1-605(a)(4), "Reports of Known or Suspected Child Abuse – Investigations, notifications to parents of abuse on school grounds or while under school supervision." Dr. Shakeshaft refers to this as the mandatory reporting statute, which has no application to the Plaintiffs' claims filed against the Hamilton County Board of Education. Likewise, Dr. Shakeshaft's reference to the development of policies regarding harassment, intimidation, bullying or cyberbullying under T.C.A. §49-6-503, has no application to the causes of action filed by the Plaintiffs against the Hamilton County Board of Education.

Dr. Shakeshaft also references a number of policies and procedures, including the necessity to implement a policy and information on the policies' implementation, regarding bullying prevention and strategies to address bullying and harassment when it happens. Dr. Shakeshaft further refers to the information relative to bullying prevention programs that shall be made available to students and parents at the beginning of the school year. All of these policies were followed by the Hamilton County Board of Education. In addition, the references to bullying and harassment are not a cause of action as against the Hamilton County Board of Education under Title IX. Dr. Shakeshaft, as part of her evaluation, also provides a "list and role of people involved." The persons included in her evaluation include Dr. Stan Evans, whom she describes as a teacher and coach for Hamilton County schools from 1979 to 1998, "who was alleged to have abused at least 38 male student athletes during

5

his twenty-year tenure." The Plaintiffs' cause of action concerns a student-on-student act. Dr. Shakeshaft states as a fact that a former teacher, Stan Evans, was alleged to have abused at least 38 male student athletes. The prejudicial impact of the statements by Dr. Shakeshaft shows not only her advocacy at all costs, but establishes the unreliability of her entire evaluation. Dr. Shakeshaft's baseless conclusions with regard to Stan Evans are based on no empirical data. By her own admission, she refers to Stan Evans as having been "alleged to have abused students."

Dr. Shakeshaft also refers to Karen Glenn, the Stars Director for Hamilton County Board of Education. Dr. Shakeshaft also references by initials G.W. "entering freshman at OHS in 2015 who participated in basketball tryouts during the summer of 2015, during which time was allegedly subjected to regular beatings in the locker room by his teammates." Once again, Dr. Shakeshaft shows her advocacy and her complete disregard to the proof that has been established in this case. As stated in her report, her reliance upon a student being subjected to regular beatings in the locker room is predicated upon the mere complaint filed by the Plaintiffs.

Dr. Shakeshaft further relies upon conjecture and absolute lacking of proof that Jason Hamerick, an OHS teacher, was "alleged to have sexually abused numerous male students over the course of his 14-year tenure." Once again, Dr. Shakeshaft relies upon baseless allegations in the complaint and relies upon an allegation of teacher against student, rather than student-on-student, which has no relevance with regard to the claims against the Hamilton County Board of Education. Dr. Shakeshaft also references Richard Roe, Plaintiff freshman, a member of the OHS varsity basketball team, who "had a pool stick pressed against his rectum by a senior teammate." The pressing of a pool stick to the

6

buttocks was not sexual in nature, as admitted by the Plaintiff, his father, and his mother.

Dr. Shakeshaft also refers to John Doe as being sodomized with a pool stick, but does not address the fact that John Doe, by his own testimony, knew that the acts taken against John Doe and Richard Roe were not sexual in nature. (Depo. John Doe pg. 122:1-8). Dr. Shakeshaft also has what she refers to as a timeline from 1979 to 1998 that references Stan Evans and 1999 to 2014, Jason Hamerick. For the reasons stated previously, the references to alleged teacher-on-student harassment have no application to the Title IX claims filed against the Hamilton County Board of Education. Moreover, the attempt by Dr. Shakeshaft to establish a timeline based solely upon the Plaintiffs' complaint establishes both her advocacy and also her complete reliance upon conjecture. The same result continues with the 2015 so-called timeline, which again is predicated on nothing but the Plaintiffs' complaint, as well as the District Attorney General's report. Her so-called timeline continues with regard to her references to what she has gleaned from police reports concerning what occurred at the Gatlinburg cabin. The statements set forth in the so-called timeline of December 19th are replete with inconsistencies with the testimony that has been developed in this cause of action. In addition, there is no assistance to the trier of fact by providing the so-called timeline created by the Plaintiffs' counsel and then regurgitated by Dr. Shakeshaft.

The same can be stated about the December 20th timeline in which Dr. Shakeshaft refers to an anal rape and that the "coaches were upstairs when these assaults occurred. Although the victims screams and resisted, the coaches remained upstairs even though the screams could be heard on the upper floor." The efforts by Dr. Shakeshaft to provide a timeline with conjecture and suppositions about what happened in the cabin are noted

7

based on empirical data of relevance. This is not an expert's report. Instead, this is an attempt to once again provide a narrative that is consistent with the Plaintiffs' complaint, and therefore is not based upon empirical data and is not a reliable report and is complete with error and is not relevant to the claims that have been filed against the Hamilton County Board of Education.

Dr. Shakeshaft also weighs in on the issue of what kinds of injuries were occasioned to John Doe. Dr. Shakeshaft, who is not a medical doctor, refers to surgery to repair damage to John Doe's rectal wall and bladder. Again, this is not a report. It is nothing but a regurgitation of the Plaintiffs' complaint. The erroneous timeline continues with a reference that Superintendent Smith e-mailed the Board to notify them of the assault and in this communication, "Mr. Smith downplayed the assault, referring to it as an "incident" during an out-of-town trip and provided no details." Dr. Shakeshaft's reference of the document attempts to characterize the very document by her own spin. The actions of Dr. Shakeshaft in this regard once again establish her necessity to be an advocate rather than an expert who seeks to assist the trier of fact.

In addition, the reference to the foregoing document is nothing more than the District Attorney General's report which, once again, has no sponsoring witness to this very day. The references to December 29th and December 30th garner the same result, with accusations of belated reporting, as well as a reference to "reports from family members of freshmen OHS basketball players that revealed what appeared to be an ongoing pattern of assaults allegedly committed under the guise of hazing." This same statement is directly from the District Attorney General's report.

Dr. Shakeshaft closes out her "timeline" by referencing indictments by the grand jury

without the complete reference to the dismissal of all causes of action. The so-called timeline presented by Dr. Shakeshaft is replete with misinformation and is nothing that should be relied upon by an educational expert who is conducting a so-called "evaluation."

Dr. Shakeshaft also provides a "summary and context of case." Once again, Dr. Shakeshaft is presenting a "context of case" that is duplicative of the Plaintiffs' complaint and the District Attorney General's report. The minor Plaintiffs to this cause have been deposed in great detail about what took place at the cabin. The adult Plaintiffs have likewise been questioned significantly regarding all actions or events that occurred in the Gatlinburg cabin. (Depo. Jane Doe pg. 27:3-34:25) (Depo. R. Roe, Sr. pg. 19:11-35:14) (Depo. Jane Roe pg. 39:4 – 48:3). Therefore, an attempt by Dr. Shakeshaft to advocate for her "summary and context of case" in no way is based upon the actual testimony of the Plaintiffs, and in no way assist the trier of fact. Moreover, the attempt to set out a narrative consistent with the Plaintiffs' cause of action is not predicated upon any empirical data or any relevance to this cause of action.

Under the heading of "Findings," Dr. Shakeshaft simply restates various policies and procedures. Dr. Shakeshaft once again refers to bullying and hazing, which is not applicable with regard to the cause of action under Title IX against the Hamilton County Board of Education. Accordingly, the policies and procedures regarding hazing and bullying, as well as reporting, are in no way relevant and likewise do not assist the trier of fact. In addition, Dr. Shakeshaft's "finding on policies" includes the following statement: "Although the HCDE board policies in place for the 2015-2016 school year address sexual harassment, harassment, intimidation, bullying, cyberbullying and mandatory reporting of any known or suspected child abuse is mandated by federal and state laws and guidelines, the HCDE

9

board policies are not in full compliance." The sum and substance of Dr. Shakeshaft's "findings on policies" is nothing more than her suggestion of what else would be needed to make the policies more complete.

Under the heading of training, Dr. Shakeshaft also says she would expect to find that there was annual training of all peer sexual harassment regarding how to identify and how to respond. There should be training for administrators in their reporting roles and training for all staff in identifying behaviors in situations where peer sexual abuse might happen. As the record is established in this matter, Ms. Karen Glenn has engaged in significant education and training for the very administrators of the Ooltewah High School. See Pages 23-48 of Karen Glenn's deposition testimony.

Dr. Shakeshaft also refers to Ms. Bullard's findings regarding training efforts. Dr. Shakeshaft states that Ms. Bullard "noted that some of the administrators had a 'that doesn't happen here' attitude toward hazing and did not see the value of training on the subject." Dr. Shakeshaft completely ignores the fact that the administrators for Ooltewah High School were trained by Ms. Glenn utilizing Olweus. Further, Dr. Shakeshaft once again relies upon a baseless statement by the Attorney General's report concluding that there is "a glaring lack of training by HCDE regarding the duty to report suspected or actual child abuse and child sexual abuse." Again, any reliance upon the Pinkston report is not relevant to this cause of action. In addition, under her findings and further findings on training, Dr. Shakeshaft refers to these are her findings, yet she is basing her comments on "Ms. Bullard's evaluation," as well as the Attorney General Pinkston's investigation. Once again, Dr. Shakeshaft refers to hazing and bullying, which has no application to this cause of action against the Hamilton County Board of Education. Likewise, Dr. Shakeshaft simply

10

parrots Attorney General Pinkston's report that the mandated reported training was not "effective." Again, General Pinkston's report is not sponsored by any witness and furthermore the Pinkston report never references any training that was provided by the Ooltewah High School by way of Karen Glenn.

Under the heading of reporting and response of Dr. Shakeshaft's report, she once again provides a timeline complete with statements as follows: "Freshman player held down while another player pushed a pool stick into his rectal area, screams should have been heard by coaches upstairs." See also under the timeline "Richard Roe and another freshman player held down and prodded in the rectum with a pool stick, screams should have been heard by coaches upstairs." Dr. Shakeshaft also erroneously states that "neither the police nor Department of Children's Services were called by Coach Montgomery." This is a falsehood and does not assist the trier of fact. There is no reason for this educational Ph.D. to proffer any timeline with the inaccuracies that are present, which is only designed to provide a narrative that is consistent with the Pinkston report or the Plaintiffs' complaint.

Dr. Shakeshaft likewise adopts the fallacious statement by the Pinkston report, "no school employees followed state law or HCDE policy regarding mandatory reporting of child abuse and child sexual abuse." That accusation against Coach Montgomery, Assistant Principal Nayadley, and Coach Williams is false and the falsity of that statement has been established from long before the complaint in this cause was filed by the Plaintiffs. Nevertheless, Dr. Shakeshaft relies upon that fallacious information. In addition, Dr. Shakeshaft states, "no one at OHS or the HCS school system notified the police, Department of Children's Services, or juvenile court as required by law. Instead, a staff member at

Leconte Medical Center contacted the police." Dr. Shakeshaft also continues the fallacy that "Coach Montgomery, Assistant Coach Williams, or Assistant Principal Jesse Nayadley did not follow the legal reporting requirements and all three were subsequently charged with failure to report child sexual abuse," without establishing the true record regarding those three individuals. Dr. Shakeshaft states that allowing the team to continue the tournament, administrators "risked signaling the freshmen that the conduct was acceptable." Dr. Shakeshaft is not engaged in a true expert assessment by way of an evaluation. Instead, she is more interested in proceeding with the early allegations of this cause of action, which have long since been determined not to be true.

Dr. Shakeshaft further states her "findings on reporting." Her findings are based upon, by her own admission, Attorney General's investigation and Ms. Bullard's investigation. From those sources, Dr. Shakeshaft concludes that "based on the Attorney General's investigation and Ms. Bullard's investigation, varsity basketball players regularly witnessed and experienced bullying and hazing, and were confident that the coaches were aware, and some parents and students claimed they reported such issues to the coaches, but the coaches did nothing about the complaints. Close proximity to the student athletes, athletes being hazed in the open, and known history of hazing, it is clear that coaches and building administrators were well aware that hazing was happening. None of them tried to stop it. None of them followed policies or the law. The coaches breached board policy by not following up on these reports." Dr. Shakeshaft has not interviewed one person from Ooltewah High School. She has not interviewed any administrator. She has likewise not interviewed any coach for the basketball team. Her so-called findings on reporting are not based upon empirical data. It is based upon conjecture, supposition, and her attempts to

12

serve as an advocate in this regard is no assistance to the trier of fact.

Likewise, in her reference to HCDE district supervision, she relies upon the Gatlinburg Police and Hamilton County Sheriff's Office interviews, as well as the ever present Attorney General's investigative report. In reliance of General Pinkston's report, Dr. Shakeshaft recites from that report, "there was little active supervision of the basketball team during 'free time' for players." Further, she states, "According to the Attorney General report, complaints about bullying and hazing were not acted upon. All of the hazing and bullying activity amongst the basketball players occurred when they had free time on their hands." Once again, Dr. Shakeshaft is not referring to any empirical data and is relying once again upon the allegation of the Attorney General's report.

Dr. Shakeshaft likewise completely omits any deposition testimony from Coach Montgomery in which he categorically denied that he was aware of any hazing or bullying on the basketball team. (Depo. A. Montgomery pg. 15:3-23). The deposition of the Plaintiff, John Doe, establishes that Coach Montgomery was not aware of the so-called racking in. (Depo. John Doe pg. 39:21 – 40:19). John Doe himself also testified that he had no expectation of anything happening to him at the Gatlinburg trip. (Depo. John Doe pg. 55:1-14). Likewise, Jane Doe, mother of John Doe, had no concerns about her son attending a trip in which Coach Montgomery was the chaperone. (Depo. Jane Doe pg. 12:15 – 13:9). Likewise, Richard Roe testified that Coach Montgomery was not aware of the racking in. (Depo. R. Roe, Jr. pg. 37:7 – 38:8). Jane Roe, the mother of Richard Roe, stated that if she had known that anything would happen to her son, she would have not allowed him to go on the trip. (Depo. J. Roe pg. 39:2-21). Richard Roe Sr. testified that no one has ever told him that Coach Montgomery was aware of the so-called racking in. (Depo. R. Roe, Sr. pg.

13

22:14-19).

Notwithstanding the testimony of the Plaintiffs in this cause, both in *Roe* and *Doe*, Dr. Shakeshaft refers to the following: "The lack of supervision the basketball players on the boys' varsity team during the fall of 2015 season ultimately resulted in the sexual assault of all four freshmen, including Richard Roe and John Doe. Almost certainly the sexual assaults would have been prevented altogether had the athletes' time been structured and had the athletes been monitored and supervised at all times." Dr. Shakeshaft's conclusory findings regarding supervision are based on nothing but conjecture. Furthermore, the so-called lack of follow up supervision of students who were reported for bullying and hazing activities has no application to a Title IX cause of action against the Hamilton County Board of Education. Against the record, Dr. Shakeshaft relies upon allegations to reach her so-called findings. Under the heading of her opinions, Dr. Shakeshaft actually states that "a combination of OHS coaches and administrators' failure to follow policy, lack of training and supervision, led to the sexual abuse of Richard Roe and John Doe." Again, Dr. Shakeshaft reaches a conclusion without any empirical data. As such, her opinions in that regard must never come before the jury.

Dr. Shakeshaft also states that the "HCDE training was inadequate for preventing the sexual abuse of Richard Roe and John Doe and directly contributed to their abuse. By not training, the District showed blatant disregard and indifference to the sexual abuse of Richard Roe and John Doe and others." The record is replete that significant training has been provided by Ms. Karen Glenn to not only teachers, but also administrators at Ooltewah High School. Dr. Shakeshaft reaches this conclusion by not relying upon any data or empirical evidence at all. She reaches the same conclusion with regard to HCDE

14

Case 1:16-cv-00497-HSM-CHS   Document 122   Filed 02/20/18   Page 14 of 17
PageID #: 1268

supervision was inadequate for preventing the sexual abuse of Richard Roe and John Doe and directly contributed to their abuse."

She further states "the coaches and administrators' failure to take seriously the possible harm to Richard Roe and John Doe showed blatant disregard and indifference to the sexual abuse of John Doe." Under <u>Daubert</u>, Dr. Shakeshaft is required to provide empirical data to support any conclusion, especially in an opinion in which she states that the HCDE supervision was inadequate for preventing the sexual abuse of Richard Roe and John Doe, and directly contributed to "their abuse." Given the training that has been demonstrated in this case and the fact that the Plaintiffs collectively had no expectation that anything that happened to John Doe would have ever occurred or would have expected that anything that happened to Richard Roe would ever occur, to suggest that there is some sort of connection between polices and procedure resulting in the abuse of students is absolutely a fiction and is in no way consistent with the standards of *Daubert*.

Based upon the forgoing, the Defendant moves to exclude the testimony of Dr. Shakeshaft due to the fact that (1) her opinions do not assist the trier of fact as to Plaintiffs' allegations under Title IX and § 1983; (2) Dr. Shakeshaft admits that the validity of the information she relied upon had not been established; and, (3) the speculation by Dr. Shakeshaft throughout her report has no basis in fact.

Respectfully submitted,

PURCELL, SELLERS & CRAIG, INC.

By: s/Charles M. Purcell
Charles M. Purcell (012461)
Jennifer C. Craig (020036)
Christopher C. Hayden (028220)
Attorneys for Defendant

P.O. Box 10547  
Jackson, Tennessee 38308  
(731) 300-0737  
Chuck@psclegal.com  
jennifer@psclegal.com  
Chris@psclegal.com

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document was forwarded by electronic means via the Court's electronic filing system.

                         s/Charles M. Purcell

Date:    February 20, 2018

PERSONS SERVED:

Monica Beck  
The Fierberg National Law Group, PLLC  
School Violence Law  
105 East Philip Street  
P.O. Box 121  
Lake Leelanau, MI 49653

Edmund J. Schmidt, III  
Law Office of Eddie Schmidt  
2323 21st Avenue South, Suite 502  
Nashville, TN 37212

Arthur F. Knight, III  
Taylor & Knight, G.P.  
800 South Gay Street, Suite 600  
Knoxville, TN 37929

Justin S. Gilbert  
Gilbert Russell McWherter Scott Bobbitt PLC  
100 W. Martin Luther King Blvd., Suite 504  
Chattanooga, TN 37402

Eric J. Oliver  
Lewis & Oliver  
100 W. Martin Luther King Blvd., Suite 501  
Chattanooga, TN 37402

Jordan K. Crews  
Brian A. Pierce  
Office of Attorney General

16

General Civil Division
P.O. Box 20207
Nashville, TN 37202

Curtis L. Bowe, III
Bowe & Associates, PLLC
707 Georgia Avenue, Suite 301
Chattanooga, TN 37402

Jaclyn L. McAndrew
Heather Ross
Office of Attorney General and Reporter
P.O. Box 20207
Nashville, TN 37202

Thomas William Caldwell
W. Carl Spining
Ortale, Kelley, Herbert & Crawford
P.O. Box 198985
Nashville, TN 37219

Rheubin M. Taylor
Office of the County Attorney
Room 204, County Courthouse
Chattanooga, TN 37402

Benjamin M. Rose
Joshua D. Arters
Law Office of Ben M. Rose, PLLC
P.O. Box 1108
Brentwood, TN 37024